UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 3:13-cv-71-KKC

JEFFREY ALLAN EMBREE                                                                  PLAINTIFF

v.                                            **OPINION & ORDER**

CAROLYN W. COLVIN,
Acting Commissioner of Social Security                                                DEFENDANT

\* \* \* \* \* \* \* \* \*

The plaintiff, Jeffrey Allan Embree, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his claims for a period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.      OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge must follow. 20 C.F.R. §§ 404.1520(a); 416.920(a); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1)     If the claimant is currently engaged in substantial gainful activity, he is not disabled.

(2)     If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found disabled.

(3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent him from doing past relevant work, he is not disabled.

(5) Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Id*. The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is disabled, then the burden shifts to the Commissioner to consider his residual functional capacity, age, education, and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a mere scintilla of evidence but less than a preponderance; it is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id*. Rather, the Court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## II. EMBREE'S MEDICAL HISTORY AND THE ADMINISTRATIVE RECORD

Embree filed his DIB claim on August 27, 2010 [TR 184-87] and his SSI claim on August 30, 2010 [TR 169, 174]. He claims that he became disabled and unable to work on September 19, 2008 due to back pain, breathing problems, asthma, a hernia, and post traumatic stress disorder [TR 33, 193]. Embree's claims were denied initially and upon reconsideration [TR 113, 120]. At his request, a hearing before an administrative law judge ("ALJ") was held on May 14, 2012 [TR 25-50].

At the hearing, Embree testified that he participated in special education classes at school but that he never completed eighth grade [TR 40-41]. He described his past work, including jobs as a factory worker, a janitor, and a maintenance worker [TR 28-29]. He explained that he recently attempted to work for a tree service; however, he testified that he fell out of a tree, hurt his back and was unable to return to that job [TR 29]. He stated that he also suffers from asthma, colitis, heartburn, acid reflux, nerve problems, and knee problems due to a motorcycle accident [TR 30-32]. Based on these physical problems, he reported difficulties standing, sitting and lifting [TR 39-40]. As far as his mental health, Embree testified that he suffers from anxiety and depression [TR 36- 37]. He described his daily activities as spending "99 percent of the time" in bed in the dark [TR 36]. He

3

also reported crying two to three times a day [TR 36], having anger problems when around people [TR 36-37], and occasionally hearing voices [TR 42].

Also at the hearing, the ALJ heard testimony from the vocational expert ("VE"), Laura Witten. She was asked to consider the following hypothetical individual with Embree's age, education, and experience, with the following limitations:

> the capacity to lift and carry up to 10 pounds frequently, 20 pounds occasionally, with no operation of foot pedal controls, no climbing of ropes, ladders or scaffolds, occasional climbing of stairs or ramps, no aerobic activity such as running or jumping, occasional stooping, no kneeling or crawling, occasional crouching, no exposure to concentrated vibration, dust, gases, smoke, fumes, temperature extremes or excess humidity. Further requires entry level work with simple one-two-three step procedures, no frequent changes in work routines, no requirement for literacy, should work in an object-oriented environment with only occasional and casual contact with co-workers, supervisors or the general public.

[TR 46]. Based on these hypothetical limitations, and assuming an individual with Embree's vocational factors, the VE testified that Embree could not perform his past relevant work. However, the VE did opine that, based on Embree's age, education, and work history, there are other jobs that exist in significant numbers in the national economy that he could perform [TR 46-47].

After considering all the evidence in the administrative record, including the testimony of Embree and Witten, the ALJ issued a decision finding Embree not disabled on June 21, 2012 [TR 11-20]. In reaching his decision, the ALJ first determined that Embree meets the insured status requirements of the Social Security Act through March 13, 2012 [TR 13]. The ALJ then began his analysis at step one by considering whether Embree's attempts to return to the work force amounted to substantial gainful activity. Because Embree only worked a short period of time and could not continue with the work activity, the ALJ determined that his attempt to work did not rise to the level required to be considered substantial gainful activity [TR 13].

4

At step two, the ALJ found that Embree suffers from the following severe impairments: marijuana dependence, allegedly in remission; mild obesity; degenerative disc disease of lumbar pain with facet hypertrophy and spurring at L5/S1; asthma with continued nicotine abuse; umbilical hernia status-post surgical repair; borderline intellectual functioning, estimated; depression NOS, rule out substance induced mood disorder; anxiety NOS; partial tear of right knee anterior cruciate ligament; and PTSD [TR 14]. Continuing on to the third step, the ALJ determined that these impairments or combination of impairments are not associated with clinical signs and findings that meet or equal in severity any of the listed impairments [TR 14-15].

Next, the ALJ reviewed the record to determine Embree's residual functional capacity, or RFC. An RFC is the assessment of a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. § 404.1545(a)(1), 416.945(a)(1). In this case, the ALJ found that Embree has the RFC to perform the exertional and nonexertional demands of sedentary and light work, with the following limitations:

> no operation of foot pedal controls; no climbing of ropes, ladders or scaffolds; occasional climbing of stairs or ramps; no aerobic activities such as running or jumping; occasional stooping, no kneeling, occasional crouching and no crawling; no exposure to concentrated vibration, dust, gases, smoke, fumes, temperature extreme or excess humidity; requires entry level work with simple 1-2-3 step procedures, no frequent change in work routines, should work in an object oriented environment with only occasional and casual contact with co-workers, supervisors or the general public.

[TR 16].

Based on this RFC and the testimony of the VE, the ALJ determined at the fourth step that Embree could not perform his past relevant work [TR 18]. However, relying on the VE's finding

5

that there are a significant number of jobs in the national economy that an individual with Embree's vocational factors and RFC could perform, the ALJ found that Embree was not disabled from September 19, 2008 through the date of his decision [TR 20].

Embree subsequently requested review by the Appeals Council. The Appeals Council denied Embree's request for review on September 4, 2013 [TR 1-3]. He has exhausted his administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## III.  ANALYSIS

In support of his appeal, Embree first argues that the ALJ failed to properly evaluate the medical source opinion of Thomas Miller, Ph.D, who performed a mental status consultative examination of Embree on February 21, 2011 [TR 327]. Dr. Miller noted that Embree's current manifestations of a mental disorder include "sad mood, low energy level, stays in bed most of the day, socially withdrawn, lack of interest in pleasurable activities, irritability with outbursts of anger," as well as "episodes of hyperventilation," a history of special education classes, and an inability to read [TR 334]. Dr. Miller diagnosed Embree with major depressive disorder, anxiety disorder, borderline intellectual functioning [TR 335]. Furthermore, he assessed Embree's level of functioning as a 50 on the Global Assessment of Functioning scale [TR 335]. Based on this assessment, Dr. Miller opined that as follows:

> Mr. Embree from a medical standpoint could likely understand and generally remember simple instructions. Apparently he was able to remember enough about the instructions as to cleaning that for 11 months he performed adequately with the only problem being that he was out sick too much. This man certainly does seem to lack, however, energy, motivation, and a sense of purpose around his own mobile home. Examples would be that the household tasks sometimes are delayed before he gets them done. Regarding some tasks, his back pain interferes. It is in the area

6

> of social functioning that it appears Mr. Embree has some difficulties because of outbursts of anger. He described this as becoming angry if someone says something to him "the wrong way," he defined as being told, by for example his boss that he was doing something the wrong way. This also has occurred when he has been interacting with [his friend]. Thus, it appears that Mr. Embree does have some ongoing problems in his social interaction that would affect how he would relate to supervisors, coworkers and the public. The same problem area is the one which would arise in terms of the need to adapt or respond to pressures. Additionally, his lack of energy, lack of desire to get up out of bed in the morning, would be expected to be related to difficulty handling pressures in a day-to-day job, for example, getting up and going to the job. It was that he missed too many days that he was fired from his last job, which he had held for nearly a year.

[TR 335-36]. Embree argues that the ALJ ignored this evidence and instead gave significant weight to the State Agency medical consultants.

The ALJ is required to "evaluate every medical opinion" in the record. *See* 20 C.F.R. §§ 404.1527(d); 416.927(c). Yet, not all medical sources are treated equally. The SSA regulations classify acceptable medical sources into three types: nonexamining sources, nontreating (but examining) sources, and treating sources. *Id*. When evaluating medical opinions, the SSA will generally "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" him. *Id*. § 404.1527(d)(1); 416.927(c)(1). The most weight, however, is afforded "to opinions from [the claimant's] treating sources, since those sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)....." *Id*. §§ 404.1527(d)(2); 416.927(c)(2). The ALJ is required to give "good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Id*.

As a one-time examining doctor, Dr. Miller's opinion is not entitled to the special deference afforded treating physicians and the ALJ is not required to give any "good reasons" for the weight

afforded the opinion. *Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *see also* 20 C.F.R. §§ 404.1527(d)(2) 416.927(c)(2). Nevertheless, the ALJ's decision reveals that he considered Dr. Miller's findings in connection with the entire medical record. In fact, the ALJ expressly adopted Dr. Miller's opinion that Embree "could understand and remember simple instructions" [TR 14].

Furthermore, in reaching his opinion, the ALJ relied on the opinion of Mary K. Thompson, Ph.D., the state agency psychologist who reviewed Dr. Miller's opinion [TR 53-65]. State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. §§ 404.1527(e)(2)(i); 416.927(e)(2)(i); SSR 96-6p, 61 Fed.Reg. 34,466-01 (July 2, 1996). Dr. Thompson determined that Embree could understand and remember simple instructions and procedures requiring brief learning periods; sustain attention, concentration, effort and pace for simple tasks requiring little independent judgment and involving minimal variations and doing so at requisite schedules of work and breaks; interact frequently as needed with supervisors and peers sufficiently for task completion, yet requiring no more than occasional interaction with the public; and adapt adequately to situational conditions and changes with reasonable support and structure [TR 63]. This opinion is consistent with the record as a whole, particularly the records from University of Louisville Psychiatric Group, which indicate that Embree's condition improved with medication [TR 276-77, 280-81], and with his work activity after the date of onset [Tr 179, 234, 281]. Accordingly, substantial evidence supports the ALJ's determination of Embree's mental RFC.

Embree also challenges the ALJ's alleged failure to consider the VE's response to his counsel's question regarding the GAF score of 50 mentioned in Dr. Miller's opinion. Specifically,

when Embree's counsel asked the VE whether an individual with a GAF of 50 could work, the VE testified that such an individual "would really have difficulty performing any type of work in the national economy" [TR 49]. There is simply no requirement, however, that the ALJ address this opinion. The ALJ relied on the VE's response to his own hypothetical question that contained only those limitations he found credible based on his review of the record. *See Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1993). While the ALJ considered Dr. Miller's opinion and even adopted some of his limitations into Embree's RFC, he did not afford any weight to the GAF score mentioned in his report. Instead, the ALJ relied on Dr. Thompson's opinion and other evidence in the record to formulate Embree's mental RFC. Accordingly, the ALJ did not err by failing to address the VE's response to counsel's question about the GAF score.

For all these reasons, the Court finds that substantial evidence supports the ALJ's decision. Embree has failed to meet his burden of proving that his condition caused more disabling limitations than those found by the ALJ. The ALJ properly considered the relevant evidence and properly analyzed all the evidence in accordance with the sequential evaluation process. As set out above, substantial evidence supports the ALJ's findings, and his conclusion that Embree is not disabled within the meaning of the Social Security Act.

## IV. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) the plaintiff's motion for summary judgment [DE #15] is **DENIED**;

(2) the defendant's motion for summary judgment [DE #16] is **GRANTED**;

9

(3) the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(4) a judgment consistent with this Opinion & Order will be entered contemporaneously.

This October 1, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY